IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ELIAS LATOUR,<br><br>Plaintiff,<br><br>v.<br><br>LENDING CLUB CORPORATION,<br><br>Defendant. | **REPORT AND RECOMMENDATION TO GRANT MOTION TO DISMISS SECOND AMENDED COMPLAINT (ECF NO. 22)**<br><br>Case No. 2:19-cv-00042-DB-EJF<br><br>Judge Dee Benson<br><br>Magistrate Judge Evelyn J. Furse |

On May 17, 2019, Plaintiff Elias Latour filed a Second Amended Complaint, the operative pleading in this case. (See 2d Am. Compl. ("SAC"), ECF No. 21.) Mr. Latour alleges that Defendant LendingClub Corporation ("LendingClub") violated the Equal Credit Opportunity Act ("ECOA") by failing to send him an "adverse action" notice when it offered him a less favorable Annual Percentage Rate ("APR") on a loan than the 10.17% APR he expected based on a mailing he received from LendingClub. (See id.) Thereafter, LendingClub moved to dismiss the Complaint, arguing that Mr. Latour cannot establish a violation of the ECOA as a matter of law. (Mot. to Dismiss 2d Am. Compl. ("Mot. to Dismiss"), ECF No. 22.) Specifically, LendingClub argues that the ECOA requires an adverse action notice only when the creditor makes an offer on substantially different terms than requested and that because the loan application Mr. Latour submitted did not allow him to request a particular APR, LendingClub had no obligation to send an adverse action notice when it offered him a loan with a 17% APR. (Id.)

1

On October 2, 2019, the undersigned set a hearing on the Motion to Dismiss for October 28, 2019.  (ECF No. 25.)  When Mr. Latour failed to appear at the hearing, the undersigned's courtroom deputy reached out to Mr. Latour by telephone.  (ECF No. 26.)  Mr. Latour indicated he would not appear at the hearing and wished to dismiss his case without prejudice.  (Id.)  On October 29, 2019, the undersigned entered an order informing Mr. Latour that if he wished to dismiss his case, he needed to file a Notice of Voluntary Dismissal pursuant to Federal Rule of Civil Procedure 41.  (Order re Dismissal of Case, ECF No. 27.)  The Order instructed Mr. Latour to file the Notice by November 12, 2019, informing him that if he failed to do so the undersigned would issue a Report and Recommendation on LendingClub's Motion to Dismiss.  (Id.)  Mr. Latour did not file a Notice of Voluntary Dismissal by November 12 or at any time thereafter.

As addressed in more detail below, having considered parties' briefing and LendingClub's arguments at the hearing, the undersigned RECOMMENDS the District Judge DISMISS Mr. Latour's Complaint with prejudice.  The exemplar loan application from LendingClub's website, MyInstantQuote.com, attached to the Motion to Dismiss—which the Court may consider as the Complaint references it, and it is central to Mr. Latour's claims—demonstrates that Mr. Latour did not have the ability to, and therefore did not, request credit from LendingClub at a specific APR when he applied for a loan using this website.  Therefore, LendingClub had no obligation to issue an adverse action notice when it offered him a loan with an APR greater than 17%, and the fact it did not send such a notice does not violate the ECOA.

**RELEVANT BACKGROUND**

    A.  **Complaint's Allegations**

In August 2018, Mr. Latour received a solicitation in the mail from LendingClub. (SAC, ¶¶ 2–3, ECF No 21.)  The solicitation indicated that Mr. Latour "had 'built a great record when it comes to managing [his] money,' that he was 'one of the special few who has already established a great credit history,' and that he was preapproved for a loan." (Id., ¶ 3; see Solicitation, Ex. D to SAC, ECF No. 21.)  The last page of the solicitation "contained sample numbers," indicating "that they were 'reserved for people with great credit,' " which LendingClub assured him that he had.  (SAC, ¶ 4; see Solicitation, Ex. D to SAC, ECF No. 21.)  "Convinced by [LendingClub's] solicitation," Mr. Latour claims he "decided to apply for a loan amount of $10,000 for 60 months at 10.17% APR as represented in the solicitation."  (SAC, ¶ 5, ECF No. 21.)  Mr. Latour accessed LendingClub's website, MyInstantOffer.com on August 20, 2018 and "provided all requested information and selected the aforementioned offer," which constituted a loan application.  (Id., ¶¶ 6–7.)  "At the culmination of the application process, [LendingClub] offered [him] a loan at an APR greater than 17 percent."  (Id., ¶ 8.)  Mr. Latour claims that this counteroffer was adverse to his interests because it exceeded (1) the APR he applied for, (2) the average 16.6% APR referenced in a footnote of LendingClub's solicitation, and (3) the APR he ultimately obtained from his credit union.  (Id., ¶ 9.)  Mr. Latour then sent an e-mail to LendingClub refusing its counteroffer and requesting a notice of adverse action.  (SAC, ¶ 11, ECF No. 21; see Latour E-mail, Ex. A to SAC, ECF No. 21.)  LendingClub responded and "refused to provide an adverse action notice."  (SAC, ¶ 12, ECF No. 21; see LendingClub E-mail, Ex. B to SAC, ECF No. 21.)

3

LendingClub did not provide him with a notice of adverse action within ninety days of the August 20 rejection of its counteroffer. (Id., ¶¶ 16, 17.) Mr. Latour seeks $10,000 in punitive damages and various injunctive relief. (Id. at 3.)

### B. Content of Solicitation

The solicitation Mr. Latour received from LendingClub and attaches to the Complaint indicates that LendingClub pre-approved Mr. Latour for a loan from $1,000 to $40,000. (Solicitation, Ex. D to SAC, ECF No. 21.) The solicitation provides illustrations of the monthly payments at various loan amounts ($5,000, $10,000, or $20,000) for (1) 36 months at 6.16% APR and (2) 60 months at a 10.17% APR. (Id.) The footnotes for both of these examples provide that "[t]he APR ranges from 6.16% to 35.89%" and explain that "[y]our APR and origination fee will be determined based on your credit at time of application." (Id. at n. 5 & 6.) The footnote for the 36 month loan indicates that the average APR for a similar solicitation from the period from August 1, 2016 to January 31, 2017 was 15.7% while the average APR for the same period for the 60 month loan was 16.6%. (Id.)

### C. LendingClub Website

LendingClub attaches to its Motion to Dismiss an exemplar application from its website, MyInstantOffer.com, the website that Mr. Latour alleges he used to apply for a loan. (Application, Ex. 1 to Mot. to Dismiss, ECF No. 22-1.) The application allows the consumer to select the amount of the loan and contains the following fields that the consumer must select or fill out (1) whether the loan is for one or two people (2) first name, (3) last name, (4) street address, (5) date of birth, (6) e-mail address, (7) password, (8) yearly individual income, and (9) yearly additional income (optional). (Id.)

Mr. Latour asserts in his Opposition that LendingClub did not attach the entire application to its Motion and attaches two additional pages from the website to his Opposition.  (Attach. to Opp'n to Mot. to Dismiss, ECF No. 23.)  The additional pages Mr. Latour attaches show that a consumer must enter a personal funding code to access the site, and the site then asks whether the loan is just for him or for two people.  (Id.)  No part of the website attached to either LendingClub's Motion or Mr. Latour's Opposition provides the option for a consumer to select a particular APR or interest rate when applying for a loan.

## **LEGAL STANDARD**

While a court construes the filings of a pro se plaintiff liberally and holds them "to a less stringent standard than formal pleadings drafted by lawyers," Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991), a pro se plaintiff must " 'follow the same rules of procedure that govern other litigants.' " Garrett v. Selby Connor Maddux & Janer, 425 F.3d 836, 840 (10th Cir. 2005) (quoting Nielsen v. Price, 17 F.3d 1276, 1277 (10th Cir. 1994)).  Thus, a pro se "plaintiff still has 'the burden of alleging sufficient facts on which a recognized legal claim could be based.' " Jenkins v. Currier, 514 F.3d 1030, 1032 (10th Cir. 2008) (quoting Hall, 935 F.2d at 1110).  While the court must make some allowances for "the [pro se] plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements[,]" Hall, 935 F.2d at 1110, "the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." Garrett, 425 F.3d at 840.

To survive a motion to dismiss, a complaint must allege " 'enough facts to state a claim to relief that is plausible on its face.' " Hogan v. Winder, 762 F.3d 1096, 1104 (10th Cir. 2014) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007)). " 'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). In reviewing a motion to dismiss, the court accepts as true the well-pled factual allegations and views the allegations in the light most favorable to the plaintiff, drawing all reasonable inferences in the plaintiff's favor. Wilson v. Montano, 715 F.3d 847, 852 (10th Cir. 2013). The court need not accept the plaintiff's conclusory allegations as true. Hall, 935 F.2d at 1110. "[A] plaintiff must offer specific factual allegations to support each claim." Kan. Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1214 (10th Cir. 2011) (citing Twombly, 550 U.S. at 555). A complaint survives only if it " 'states a plausible claim for relief,' " though courts recognize that "[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context." Id. at 1214–15 (quoting Iqbal, 556 U.S. at 679).

"In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits . . . and documents incorporated into the complaint by reference[.]" Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009); see also Jacobsen v. Deseret Book Co., 287 F.3d 936, 941 (10th Cir. 2002) (stating that a "district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."). "Mere legal conclusions and factual allegations that

6

contradict [] properly considered document[s] are not well-pleaded facts that the court must accept as true." GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1385 (10th Cir. 1997).

The Complaint attaches a copy of the solicitation Mr. Latour received from LendingClub, (Solicitation, Ex. D to SAC, ECF No. 21), which the undersigned considers in resolving LendingClub's Motion to Dismiss. The Complaint also refers to LendingClub's website, MyInstantOffer.com, which is central to Mr. Latour's claims because he applied for the loan through that website. LendingClub attaches an exemplar application from the MyInstantOffer.com website to its Motion to Dismiss. (Application, Ex. 1 to Mot. to Dismiss, ECF No. 22-1.) Mr. Latour disputes the completeness of the application and attaches two additional pages from the website to his Opposition. (Attach. to Opp'n to Mot. to Dismiss, ECF No. 23.) With that unopposed addition, both parties agree on the completeness of the online application. Thus, the Court considers the pages from the MyInstantOffer.com website attached to both the Motion and Opposition in evaluating whether Mr. Latour's Complaint states a plausible claim for relief.

## **DISCUSSION**

Under the ECOA, an "adverse action" is

> [a] refusal to grant credit in substantially the amount or on substantially the terms requested in an application unless the creditor makes a counteroffer (to grant credit in a different amount or on other terms) and the applicant uses or expressly accepts the credit offered[.]

12 C.F.R. § 1002.2(c)(1)(i); see also 15 U.S.C. § 1691(d)(6) (stating that "the term 'adverse action' means . . . a refusal to grant credit in substantially the amount or on substantially the terms requested."). An "application" constitutes "an oral or written

7

request for an extension of credit that is made in accordance with procedures used by a creditor for the type of credit requested." 12 C.F.R. § 1002.2(f). Once the applicant completes the credit application, a creditor has thirty days to either approve, deny, or make a counteroffer on the application. 12 C.F.R. § 1002.9(a)(1)(i). The creditor must provide notice of adverse action within "90 days after notifying the applicant of a counteroffer if the applicant does not expressly accept or use the credit offered." 12 C.F.R. § 1002.9(a)(1)(iv).

The Complaint asserts that after receiving a solicitation from LendingClub in August 2018, Mr. Latour applied for a loan of $10,000 for 60 months at a 10.17% APR on LendingClub's website, MyInstantOffer.com, as described in the solicitation. (SAC, ¶¶ 3–6, ECF No. 21.) After applying for the loan, LendingClub offered Mr. Latour a loan with an APR greater than 17%. (Id., ¶ 8.) The Complaint claims that this "counteroffer," which Mr. Latour did not accept, constitutes an adverse action under the ECOA and that as such, LendingClub had to provide him with a notice of adverse action within 90 days but failed to do so in violation of the ECOA. (Id., ¶¶ 9–10, 13, 15–18.) LendingClub argues in its Motion to Dismiss that the solicitation Mr. Latour received did not promise a loan at a certain APR and made clear that the actual APR offered would be determined based on credit at the time of application. (Mot. to Dismiss 6, ECF No. 22.) Further, citing to the attachment to its Motion, LendingClub argues that the loan application that Mr. Latour completed on MyInstantOffer.com did not allow him to request either a specific APR or a specific sample loan described in a solicitation. (Id. at 7.) Accordingly, LendingClub claims that its offer to Mr. Latour of a $10,000 loan with a 17% APR did not constitute a "refusal to grant credit . . . on substantially the terms

requested in an application" and therefore did not constitute an "adverse action" requiring notice under the ECOA.  (Id.)  Mr. Latour counters that an "[a]dverse action is any action taken adverse to the interests of the consumer" and that any other interpretation of the ECOA would run contrary to the statute's strict notice requirement and produce an absurd result.  (Opp'n at 2–3, ECF No. 23.)  He further claims that LendingClub did not attach the entire application from MyInstantOffer.com and that the additional pages he attaches to his Opposition from that website show that a personal funding code is required to apply for a loan and that "[b]y requiring this code, [LendingClub] is incorporating the solicitation into its application."  (Id. at 3.)  Mr. Latour "firmly maintains that by supplying the pre-screened code and by selecting the terms $10,000 and 60 months repayment, he clearly applied for the $10,000 at 10.17% APR and a 60-month repayment term advertised on [LendingClub's] 'Free Quote Form.' " (Id.)

      Mr. Latour's allegations contradict the plain language of the documents attached to and referenced in the Complaint.  Therefore, the undersigned does not accept Mr. Latour's allegations as true but rather bases its decision of the central documents whose authenticity the parties do not contest.  See GFF Corp., 130 F.3d at 1385 ("Mere legal conclusions and factual allegations that contradict [] properly considered document[s] are not well-pleaded facts that the court must accept as true.").  First, the solicitation Mr. Latour received does not offer a $10,000 loan for 60 months at a 10.17% APR.  The solicitation provides illustrations of the monthly payments at various loan amounts, including a $10,000 loan for 60 months at a 10.17% APR.  (Solicitation, Ex. D to SAC, ECF No. 21.)  The footnote to this illustration provides that "[t]he APR ranges

9

from 6.16% to 35.89%" and explains that the "APR and origination fee will be determined based on [an applicant's] credit at time of application." (Id. at n. 6.) The footnote further states that the average APR for a similar solicitation from the period from August 1, 2016 to January 31, 2017 was 16.6%. (Id.) Second, despite Mr. Latour's allegations that he applied for a $10,000 loan for 60 months at a 10.17% APR on LendingClub's website, the printouts from the website show that while Mr. Latour could select a loan amount in the application, he could not request or select a desired APR or interest rate for that loan. (See Application, Ex. 1 to Mot. to Dismiss, ECF No. 22-1; Attach. to Opp'n to Mot. to Dismiss, ECF No. 23.) Nor could Mr. Latour select a particular offer contained in a solicitation, as the Complaint alleges. (See id.)

      The documents attached to and incorporated into the Complaint demonstrate that Mr. Latour fails to state a claim for a violation of the ECOA. Because Mr. Latour could not select a desired APR as part of his application on LendingClub's website, LendingClub's offer of a $10,000 loan—the amount he requested—at an APR greater than 17% did not constitute an "adverse action" within the meaning of the ECOA. ECOA regulations provide that an "adverse action" is "[a] refusal to grant credit in substantially the amount or on substantially the terms requested in an application . . . ." 12 C.F.R. § 1002.2(c)(1)(i); see also 15 U.S.C. § 1691(d)(6). Because Mr. Latour could not request a 10.17% APR in his application, LendingClub's offer of a $10,000 loan with a 17% APR does not constitute a refusal to grant credit on the terms requested and therefore, is not an adverse action. Accordingly, LendingClub did not have to provide Mr. Latour a notice of adverse action, and its failure to do so does not violate the ECOA.

Finally, the undersigned notes that Mr. Latour's argument that any action adverse to the interests of a consumer constitutes an "adverse action" under the ECOA contradicts the plain language of the statute and regulations that define an "adverse action" as either a refusal to grant credit in the amount or on the terms requested in an application. See 12 C.F.R. § 1002.2(c)(1)(i); 15 U.S.C. § 1691(d)(6). Further, Mr. Latour's argument that any other interpretation of the statute would be contrary to the strict notice requirement and produce an absurd result is likewise without merit.

> Courts should follow the literal language of a statute when it is clear and when it does not lead to irreconcilable inconsistencies or clearly absurd results that Congress could not have intended. . . . There is a heavy presumption that Congress meant what it said, particularly when the words are clear and not ambiguous when given their ordinary meaning.

Resolution Tr. Corp. v. Westgate Partners, Ltd., 937 F.2d 526, 531 (10th Cir. 1991). Mr. Latour provides no evidence that Congress intended to define "adverse action" in a way other than that provided in the plain language of the ECOA and its regulations. The ECOA and its regulations clearly define "adverse action" and the undersigned will not depart from the plain meaning of the statute and regulations. Under that plain language, LendingClub's offer to Mr. Latour of a loan at a greater than 17% APR does not constitute an "adverse action," and therefore LendingClub had no obligation to issue a notice of adverse action. Mr. Latour's Complaint therefore fails to state a plausible claim for violation of the ECOA.

Because Mr. Latour has already attempted to amend his Complaint to state a claim in response to a previous Motion to Dismiss, (see Order, ECF No. 16), and failed to appear at the hearing on this Motion and expressed an interest in dismissing the case, the undersigned recommends dismissal with prejudice.

**RECOMMENDATION**

For the reasons stated above, the undersigned RECOMMENDS the District Judge GRANT LendingClub's Motion and DISMISS Mr. Latour's Complaint with prejudice.

The Court will send copies of this Report and Recommendation to the parties and hereby notifies them of their right to object to the same. The Court further notifies the parties that they must file any objection to this Report and Recommendation with the clerk of the district court, pursuant to 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b), within fourteen (14) days of service. Failure to file objections may constitute waiver of objections upon subsequent review.

DATED this 6th day of March, 2020.

BY THE COURT:

EVELYN J. FURSE
United States Magistrate Judge